UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JACOB M. BELL, SR. | CIVIL ACTION NO. 6:13-cv-0382 |
| VS. | SECTION P |
| | JUDGE RICHARD T. HAIK, SR. |
| ROBYN LANDRY, ET AL. | MAGISTRATE JUDGE PATRICK J. HANNA |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Jacob M. Bell, Sr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 19, 2012. Plaintiff is a prisoner incarcerated at the St. Mary Parish Law Enforcement Center (SMPLEC) and he complains about medical care, conditions of confinement, and the failure of the jail administration to respond to his administrative remedies procedure grievances. He seeks declaratory judgment, injunctive relief, and compensatory and punitive damages against a variety of defendants including St. Mary Parish Sheriff Mark Hebert, the nurses at SMPLEC and the LSU Medical Center and Hospital. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

### Background

Plaintiff filed his original hand-written complaint, entitled "Petition for Damages for Personal Injury/Negligence" on February 19, 2013. He invoked the jurisdiction of the Court citing 42 U.S.C. §1983 and presented a jumbled litany of complaints.

Plaintiff was transferred to SMPLEC on December 9, 2011 and upon his arrival was subjected to urinalysis, inmate orientation, and classification. Plaintiff was examined by the nursing staff who monitored his blood pressure and heart rate, however he complains that they did not provide an eye or ear examination nor dental or mental health referral. Plaintiff claims that he has unspecified  "spinal" problems and is bipolar. At this initial examination he was neither diagnosed nor treated and was advised that it would take up to one month before he could be examined by a physician. He requested but was denied a bottom bunk and thereafter slept on a mattress on the cell floor.

On December 17, 2011 plaintiff made an emergency sick call at SMPLEC however, that was a weekend and he did not see a physician or a nurse. Instead, he complains, corrections officers dispensed his medication. Plaintiff received medication for the first time on December 20, 2011. He received a mattress on that same date and despite promises from staff, he continues to sleep on the mattress on the floor. His requests to speak to the warden and sheriff were ignored, as was his final grievance to James LeBlanc, the Secretary of the Louisiana Department of Corrections.

According to plaintiff, during the period from December 19, 2011 to June 1, 2012 he  was examined by Nurse Cathy Thornton, Nurse Dalton, and Nurse Burgess; he was examined by Dr. Namina, a dentist, a psychologist from New Iberia named Naquin and a psychiatrist named "Mrs. Dupont." He complains that he saw these health care professionals only once and that there was no "follow-up." He complained that Mrs. Dupont ordered medication but he never received it and that his requests for copies of his medical records from Forcht-Wade Corrections Center, Elayn Hunt Correctional Center, Teche Action Clinic, Chabert Hospital, Louisiana Workforce,

2

the LSU Hospital and St. Mary Mental Health were ignored.

On June 1, 2012 Correct Health contracted with SMPLEC to provide on-going health care to the inmates. He and other patients with "chronic pain" were advised that they would be examined by a physician within 48 hours, however he was not examined by a health care professional until July when he was examined by Nurse Jean, Director of Staff.

Prior to his incarceration plaintiff had an MRI examination and he had an appointment to discuss treatment options on April 2, 2012 at the  Interim LSU Public Hospital Medical Center in New Orleans. He was, of course, incarcerated at the time of the appointment, and he was not transported to that appointment because of "security concerns."   Instead, his appointment was rescheduled for May 2012 and he was transported to the hospital on that day for that purpose. However, because the nursing staff neglected to send a copy of the MRI and medical records, the examination was cancelled. Thereafter he had an appointment on September 17, 2012 but his description of that appointment "(ILH Neurosurgery CLH")  is incomprehensible.

Plaintiff complains that he has not seen a physician other than the psychiatrist he spoke to "two or three times by audio/video camera" and that physician changed all of plaintiff's medication which was previously  prescribed by Mrs. Dupont at St. Mary Mental Health.  On August 12, 2012 he also discontinued the bi-polar medication that had been prescribed earlier because he opined that it was a dangerous medication for an inmate since it required constant monitoring.

According to plaintiff he paid to see a physician on August 2, 2012 but Nurse Burgess refused to allow him to see the doctor. Again, on August 29, 2012 he paid to see a dentist but his appointment was cancelled because the notice of appointment had been mistakenly mailed to his

3

home address and not the prison.

Plaintiff was eventually seen by a dentist who directed the nurse to order plaintiff some poly-grip but otherwise did not examine plaintiff's teeth. According to plaintiff two teeth that he wanted extracted eventually fell out before the extraction could be scheduled. Plaintiff also was examined by a dentist in New Iberia and by a physician at the LSU Hospital.  While this physician did not have access to plaintiff's medical file,  he neverthelesss did prescribe medication for plaintiff's back pain.

Plaintiff claims that the conditions at the SMPLEC are in violation of the Statement of Rights provided in the prisoner's hand-book. Specifically, that the meals are served cold, that the facilities for personal sanitation, the clothing provided and the bedding provided are substandard. He complained that the ventilation and heating is substandard and that there are insufficient opportunities for physical exercise.

Plaintiff filed his original hand-written complaint, entitled "Petition for Damages for Personal Injury/Negligence" on February 19, 2013. He invoked the jurisdiction of the Court citing 42 U.S.C. §1983 and presented a jumbled litany of complaints as outlined above, and presented three claims for relief –

(1) the administrative remedies procedure available to him was inadequate because the grievances were ignored at each step and because he was not allowed to speak to the warden or sheriff about his grievances;

(2) he was and has been denied prompt and adequate medical care; and

(3) the conditions of confinement violated his right to be free from cruel and unusual punishment.

4

As noted above, he prayed for declaratory judgment, injunctive relief, and compensatory and punitive damages.

On March 25, 2013, in compliance with an order directing him to submit his complaint on the form provided to prisoners seeking relief pursuant to Section 1983, plaintiff filed an amended complaint. That complaint restated the broad outlines of the detailed original complaint, but otherwise added no additional claims for relief.

## *Law and Analysis*

### *1. Screening*

Plaintiff was apparently a detainee when he experienced the conditions and circumstances complained of. Nevertheless, a detainee is considered a prisoner pursuant to 28 U.S.C. §1915(h). When a prisoner or detainee is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 596 U.S. 662,  129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff filed an original complaint with various exhibits all outlining the broad contours of his claim; he submitted an amended complaint in response to the Court's order. Further amendment would serve no useful purpose.

## 2. Conditions of Confinement

Plaintiff complains of various conditions of confinement.  Plaintiff claims that the conditions at the SMPLEC are in violation of the Statement of Rights provided in the prisoner's

6

hand-book in that (1) the meals are served cold, (2) the facilities for personal sanitation are inadequate; (3) the clothing and the bedding are substandard; (4) as are the ventilation and heating; and, (5) insufficient opportunities for physical exercise are provided.

During the period in question, he was a pre-trial detainee and not a convicted inmate.  It has long been held that "... [t]he State's exercise of its power to hold detainees and prisoners ... brings with it a responsibility under the United States Constitution to tend to the essentials of their well-being: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."  *Hare v. City of Corinth, Miss*., 74 F.3d 633, 638-39 (5th Cir.1996) (*en banc*) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs*., 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

Thus, a detainee's constitutional rights arise from "both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare,* at 639 (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The Due Process Clause of the Fourteenth Amendment prohibits the punitive confinement of a pretrial detainee since, by definition, the guilt of a detainee has not yet been adjudicated. *See Bell*, 441 U.S. at 535. Since plaintiff was a pretrial detainee, and since his allegations have been accepted as true for the purposes of this Report, the issue herein is whether or not the complained of acts or omissions of the defendants amounted to a violation of plaintiff's due process rights under the Fourteenth Amendment.

Under Fifth Circuit jurisprudence, in order to determine the appropriate standard for analysis of constitutional challenges brought by pretrial detainees under § 1983, courts are

directed to first to classify the challenge as either an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex*., 124 F.3d 736, 738 (5th Cir.1997) (citing *Hare*, 74 F.3d at 644).  When a detainee complains of conditions of confinement, the constitutional challenge is to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644.  On the other hand, complaints of episodic acts or omissions point to particular acts or omissions of one or more officials, and the Court's analysis focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645. A detainee who complains that an "episodic act or omission" resulted in an unconstitutional violation of a his Fourteenth Amendment rights is required to show that the officials acted with  "deliberate indifference" to his health and safety. *Hare*, 74 F.3d at 647-48.

The plaintiff here attacks the general conditions, practices, rules, or restrictions of pretrial confinement – overcrowding, and sanitation, exercise, clothing  and dietary related concerns. Therefore, the Court must apply the test announced by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *See Hare*, 74 F.3d at 644.  Under this test, the Court must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Bell*, 441 U.S. at 538. The test requires a court to determine whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* (citing cases).

In order to determine whether the condition is a punishment, and therefore unconstitutional, the court must determine  whether the "particular condition or restriction of

pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539.  If it is, the condition or restriction does not amount to unconstitutional "punishment." *Id.* "Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* As is shown more fully below, none of plaintiff's conditions of confinement claims have been shown to be arbitrary or purposeless or unrelated to legitimate goals.  At worst, plaintiff has been exposed to a various inconveniences – cold food, overcrowding, etc. – and not punishment.

Plaintiff implies that he must sleep on a mattress on the floor because of overcrowding. Of course, overcrowded conditions can, in some instances, be violative of the Constitution. *Bell*, 441 U.S. at 542, 99 S.Ct. at 1875. In order to determine whether "overcrowding" amounts to a constitutional violation, the court must examine "...  the length of time an individual detainee must spend in a confined area both ultimately and on a daily basis, and the adequacy of the given sleeping space." See *id.* at 543, 99 S.Ct. at 1876.  Here, plaintiff does not allege overcrowding sufficient to establish a Constitutional claim.  Further, plaintiff has been exposed to the complained of conditions for relatively short periods of time and, he alleged no particular harm arising from those conditions.

Plaintiff also complained of dietary and sanitation concerns. He complained that food was served cold and in general complained about substandard sanitation. Rather than punitive, the conditions about which plaintiff complained appear to rise to no more than "a  *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 n. 21; see also *Hamilton v. Lyons*, 74 F.3d 99, 106-07 (5th Cir.1996) (affirming dismissal of conditions of

confinement claim as frivolous); *Callicutt v. Panola County Jail*, 200 F.3d 816 (5th Cir. 1999).

Plaintiff complained about the clothing and bedding provided upon his entry into custody. Jail officials must provide "humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, ... medical care," and hygiene. *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir.1999).  Once again, plaintiff has not demonstrated that the complained of circumstances are the result of a punitive policy, and, since his argument raises no more than a *de minimis*  imposition the claim is frivolous.  *Bell*, 441 U.S. at 539 n. 21.

### 3. Medical Care

Plaintiff also complains about the denial of appropriate or adequate medical care, dental, or mental health care. As noted above, plaintiff's constitutional rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). Detainees, by virtue of their status, are not subject to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). Nonetheless, when, as here, a pretrial detainee brings  medical care claims which are directed toward  particular incidents, these events are properly analyzed as episodic acts, and the deliberate indifference standard is applied. *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996). This standard is substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Id.*  To state a cause of action, this plaintiff needs to show deliberate indifference on the part of each of the defendants. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm.  Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.*

10

Thus, in order to establish an actionable constitutional violation  plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the plaintiff to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings.

To the extent that the pleadings allege negligence or even malpractice on the part of the defendants with regard to his medical care claim, plaintiff fails to state a claim for which relief may be granted since deliberate indifference is not equivalent to negligence. Put simply, deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it.  In other words, a civil rights  plaintiff must allege and prove that each of the  defendants knew of and then disregarded an excessive risk of injury to him, and,  that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837.

Contrary to his conclusory allegations, the facts alleged by the plaintiff, and the responses

of jail staff set forth in the numerous administrative grievance replies, indicate that plaintiff was examined and treated often and thoroughly by health care professionals including jail nurses, physicians, and mental health specialists – both psychiatrists and psychologists. It is clear that plaintiff merely disagrees with their various diagnoses and treatment choices. "[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). <u>Disagreement with diagnosis and treatment cannot support a claim of deliberate indifference</u>. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Here it appears that plaintiff disagrees with the diagnoses and treatment choices made by various health care providers and as such, his medical care claims fail to state a claim for which relief may be granted.

*4. Grievances*

Finally, plaintiff also complains that his prison grievances were ignored, a curious claim given that he has provided copies of many of the grievances and the responses to those grievances by jail staff. Nevertheless, even if true, the plaintiff's allegations concerning grievances fail to state a claim for which relief may be granted. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or

12

regulation, as is alleged here, does not violate constitutional *minima*. *See Taylor v. Cockrell*, 92 Fed.Appx. 77, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (citing *Sandin*, *supra*, and finding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)(Burger, C.J., concurring)(applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)*(concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

13

*Conclusion and Recommendation*

Plaintiff's grievances claim fails to state a claim for which relief may be granted.

Therefore

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Lafayette, Louisiana May 30, 2013.

_____

**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**

14